DES PLAINES FIREMEN'S ASSOCIATION *et al.*, Plaintiffs-Appellees, v. THE CITY OF DES PLAINES, Defendant-Appellant (The Village of Arlington Heights *et al.*, Intervenors-Defendants-Appellants).

First District (2nd Division)  Nos. 1—93—3206, 1—93—3241 cons.

Opinion filed September 27, 1994.—Rehearing denied November 10, 1994.—Modified opinion filed November 15, 1994.

David R. Wiltse, of Des Plaines, for appellant City of Des Plaines.

Altheimer & Gray, of Chicago (Jack M. Siegel, of counsel), for other appellants.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Brian Schroeder, of counsel), for appellees.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

In this declaratory judgment action, the circuit court granted the plaintiffs' motion for summary judgment, ruling that pursuant to an amended statute the City of Des Plaines (Des Plaines) was required to pay to its fire department money derived from the foreign fire insurance tax or license fee. Raising a number of constitutional issues, Des Plaines and various municipal intervenors appealed, and the appeals were consolidated by order of this court. For reasons that follow, we affirm.

On December 5, 1991, the Des Plaines Firemen's Association, a voluntary association whose members are full-time members of the Des Plaines Fire Department, and Donald Trost, treasurer of the Des Plaines fire department (jointly, plaintiffs), filed a complaint for declaratory judgment against Des Plaines, an Illinois home rule municipality. Plaintiffs alleged that Des Plaines was violating section 11—10—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 11—10—1 (now 65 ILCS 5/11—10—1 (West 1992))), which permits municipal authorities to impose a tax or license fee of not more than 2% of the gross receipts received from fire insurance upon property located within the municipality written by out-of-State insurance companies, and section 11—10—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 11—10—2 (now 65 ILCS 5/11—10—2 (West 1992))), which provides that the municipal treasurer shall pay all moneys derived from such a tax or license fee to the treasurer of the fire department of the municipality for the maintenance, use, and benefit of the fire department. Plaintiffs contended that Des Plaines was collecting the tax but not distributing the money to its fire department as required by law. Plaintiffs, therefore, sought a judgment declaring that Des Plaines is required to make the payments.

Des Plaines filed its answer, including affirmative defenses, maintaining that Public Act 86—395, which amended section 11—10—2 of the Illinois Municipal Code in 1990 to require that the funds collected under the statute be paid directly to the fire department, was unconstitutional, illegal, invalid, and unenforceable.

Subsequently, the Villages of Arlington Heights, Elk Grove Village, Palatine, Glencoe, Northbrook, Schaumburg, and Skokie, and the City of Evanston (intervenors) applied for leave to intervene as parties defendant in the case. All intervenors except the Village of Glencoe are Illinois home rule municipalities. Each was in the same

position as Des Plaines, in apparent violation of the statute. The court granted leave to intervene to all applicants except the Village of Glencoe, because it was not a home rule municipality.

After all parties filed motions for summary judgment, the circuit court heard oral argument on the cross-motions and granted plaintiffs' motion, denying the motions of Des Plaines and intervenors. This appeal followed.

Division 10 of the Illinois Municipal Code, titled "Foreign Fire Insurance Company Fees," is composed of two parts. The first part provides:

"In each municipality or fire protection district, whether incorporated under a general or special law, which has a fire department established and maintained by municipal or fire protection district ordinances, every corporation, company, and association which is not incorporated under the laws of this state and which is engaged in effecting fire insurance in the municipality or fire protection district, shall pay to the treasurer of the municipality or to the secretary of the fire protection district for the maintenance, use, and benefit of the fire department thereof, a sum not exceeding 2% of the gross receipts received from fire insurance upon property situated within the municipality or district.

Each municipality and fire protection district may prescribe by ordinance the rate of the tax or license fee to be paid, but this rate shall not exceed the rate specified in this section." 65 ILCS 5/11—10—1 (West 1992).

The second part refers to fire department officers and the disposition of funds derived from the foreign fire insurance tax or licensing fee. The predecessor statute was originally adopted in 1895, and prior to the amendment at issue in 1990 read as follows:

"The corporate authorities of any municipality containing less than 50,000 inhabitants which has an organized fire department shall pass an ordinance providing for the election of officers of that department, by the members of the department. These officers shall include a treasurer, and they shall make all needful rules and regulations with respect to the department and the management of the money to be paid to the treasurer. In all such municipalities the municipal treasurer shall pay the sums received from the insurance companies specified in Section 11—10—1 to the treasurer of the fire department of the municipality in which it is collected. The treasurer of that fire department shall give a sufficient bond to the municipality in which the fire department is organized. This bond shall be approved by the mayor or president, as the case may be, conditioned upon the faithful performance by the treasurer of his or her duties under

the ordinance and the rules and regulations provided for in this section. The treasurer of the fire department shall receive the money so paid in and shall pay out the money upon the order of the fire department for the maintenance, use, and benefit of the department.

However, in any municipality where a firemen's pension fund is or may be established under this Code or other laws of this state, all of the money paid to the municipal treasurer as provided in Section 11—10—1 may be set apart and appropriated by the municipality to the fund for the pensioning of disabled and superannuated members of the fire department, and of the surviving spouses and orphans of deceased members of the fire department." Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2.

Public Act 86—935 amended this section by deleting the last full paragraph, which allowed the money to be paid to the firefighters' pension fund instead of to the fire department. It also added the following paragraph:

"The provisions of this Section shall be the exclusive power of the State, pursuant to subsection (h) of Section 6 of Article VII of the Constitution." (65 ILCS 5/11—10—2 (West 1992).)

Finally, Public Act 86—935 deleted the population requirement of 50,000 and substituted a population requirement of 250,000. (65 ILCS 5/11—10—2 (West 1992).) This amendment made the section apply to every municipality in Illinois except the City of Chicago. The amendment was vetoed by the governor, but the veto was overridden on October 31, 1989, and the amendment became effective on January 1, 1990.

The pension funds referred to in the section before the amendment were established pursuant to the Illinois Pension Code (40 ILCS 5/4—101 *et seq.* (West 1992)), which covers municipalities with 5,000 or more but less than 500,000 inhabitants. A comparable statute creates a separate pension fund for firefighters in the City of Chicago. (40 ILCS 5/6—101 *et seq.* (West 1992).) Prior to the amendment of the statute by Public Act 86—935, Des Plaines and intervenors paid the proceeds of the foreign fire insurance tax or license fee into the firefighters' pension fund, as authorized by the statute. After the amendment, the municipalities continued to make the payments into the pension fund rather than paying the money collected to the "treasurer of the fire department." In the case of the intervenors, such a position did not even exist, since as municipalities larger than 50,000 and smaller than 250,000 none of the intervenors had been covered by the prior statute requiring the election of officers in their fire departments.

# I

Des Plaines and the intervenors first assert that the statutory amendment fails to preempt home rule. Subparagraph (h) of section 6 of article VII of the Constitution does not apply to a taxing power, they argue, and thus attempting to remove control over a tax levied by a municipality cannot be reached by the provisions of subparagraph (h). Further, according to Des Plaines and the intervenors, the section of the Constitution in question relates only to those instances where the State is exercising a power or function, and that is not the case here. The amendment, they argue, is therefore unconstitutional.

Plaintiffs respond that the Illinois Insurance Code is dispositive of the issues involved in this appeal. It is through the Insurance Code and not the statutory amendment, they argue, that Des Plaines and the intervenors were deprived of the power to levy taxes against insurance companies, and it is through the Insurance Code that the State exercises its power of taxation. Thus, according to plaintiffs, the arguments of Des Plaines and the intervenors must fail, and they must begin paying the proceeds of the tax or license fee to the fire departments in their municipalities, as required by the amended statute.

In its declaration of public policy underlying the Illinois Insurance Code, the General Assembly stated:

"[P]ursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution of 1970, *** any power or function set forth in this Act to be exercised by the State is an exclusive State power or function. Such power or function shall not be exercised concurrently, either directly or indirectly, by any unit of local government, including home rule units, except as otherwise provided in this Act. Provided further that the fees, charges and taxes provided for by this Act shall, as provided for in Section 415 of this Act, be in lieu of all license fees or privilege or occupation taxes or other fees levied or assessed by any home rule unit and said Section 415 of this Act is declared to be a denial and limitation of the powers of home rule units pursuant to paragraph (g) of Section 6 of Article VII of the Illinois Constitution of 1970." 215 ILCS 5/2.1 (West 1992).

This public policy declaration performed two related acts: it replaced all taxes imposed by home rule units with those imposed by section 415 of the Illinois Insurance Code, and it used the terms of section 415 of the Illinois Insurance Code to deny home rule units the power to levy any type of tax against insurance companies. The Illinois Insurance Code consequently accomplished what Des Plaines and the intervenors claim the amendment to section 11—10—2 did: it stripped all home rule units, including Des Plaines and the intervenors, of their power to tax insurance companies. The Illinois

Insurance Code did so pursuant to paragraph (g) of section 6 of article VII of the Illinois Constitution, which states that "[t]he General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(g).

Section 415 of the Illinois Insurance Code provides:

> "The fees, charges and taxes provided for by this Article shall be in lieu of all license fees or privilege or occupation taxes or other fees levied or assessed by any municipality, county or other political subdivision of this State, and no municipality, county or other political subdivision of this State shall impose any license fee or occupation tax or fee upon any domestic, foreign or alien company, or upon any of its agents, for the privilege of doing an insurance business therein, except the tax authorized by Division 10 of Article 11 of the Illinois Municipal Code ***." 215 ILCS 5/415 (West 1992).

This section plainly declares those taxes imposed by the Illinois Insurance Code, which are taxes imposed by the State, to be the only taxes imposed upon insurance companies. Passage of this section thus stripped Des Plaines and the intervenors of their power to tax insurance companies. Contrary to the assertion of Des Plaines and the intervenors, section 415 cannot be said to be in violation of section 7 of the Statute on Statutes (5 ILCS 70/7 (West 1992)), which requires specificity in the denial of home rule unit powers and in the terms of such a denial, because the language of section 415 of the Illinois Insurance Code is quite explicit about both the denial and its extent.

After the denial of home rule units' powers to tax insurance companies, section 415 goes on to except the tax specified in section 11—10—1 of the Illinois Municipal Code. Municipalities, including Des Plaines and the intervenors, are allowed to set the rate of this one tax or license fee, with 2% its maximum. This court has stated that it is the act of determining and fixing the amount of the tax that constitutes the levy of the tax (*Royal Liquor Mart, Inc. v. City of Rockford* (1985), 133 Ill. App. 3d 868, 479 N.E.2d 485); it is therefore clear that home rule units in fact levy this tax.

■ The fact that home rule units are allowed to levy this tax, however, does not mean that the amendment at issue fails to preempt home rule, rendering the amendment unconstitutional. Prior to the passage of the amendment, home rule units were allowed to levy the tax, and they had two options regarding the disposition of the funds received: they could be given to the treasurer of the fire department, or they could be used by the municipality for contributions to the

firefighters' pension fund. No other uses were permitted. (See Ill. Rev. Stat. 1989, ch. 24, par. 11—10—2.) The amendment merely further restricted the already restricted uses to which the funds received could be put. Such a restriction is not unconstitutional.

Public Act 86—935, which amended section 11—10—2 of the Illinois Municipal Code, then, could not preempt any taxing power of home rule units because such taxing power had already been preempted by the Illinois Insurance Code. The particular tax at issue was levied by and continues to be levied by home rule units. The prior restrictions on how the home rule units could use the funds received were constitutional, and the new restriction imposed by the amendment is also constitutional.

■ Related to this issue is the contention of Des Plaines and the intervenors that the amendment to section 11—10—2 of the Illinois Municipal Code constituted an invalid invocation of subsection (h) of section 6 of article VII of the Illinois Constitution because the State was not performing or exercising the power of taxing insurance companies. The invocation of this subsection of the Constitution, however, applied specifically only to the section of the statute regarding the election of officers of the fire department and the paying of funds received from the tax imposed to them, not to the general power of taxing insurance companies. The tax involved is contained in the preceding section. Subsection (h) of section 6 of article VII of the Illinois Constitution was thus validly invoked, and the argument of Des Plaines and the intervenors to the contrary has no merit.

## II

■ Des Plaines and the intervenors further assert that Public Act 86—935 violated section 13, article IV, of the Illinois Constitution of 1970 as a local or special law. Plaintiffs counter that all the amendment does is differentiate the City of Chicago from all other Illinois cities, and since there is a long history of such differentiation, there is no constitutional infirmity.

The constitutional language at issue is as follows:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, § 13.)

Des Plaines and the intervenors argue that since the amendment increased the population classification of municipalities covered under the Act from 50,000 to 250,000, effectively leaving the City of Chicago and the County of Cook as the only home rule municipalities

exempted from the purview of the statute, and since such exemptions have no rational basis, the amendment is unconstitutional.

Differentiating the City of Chicago from all other Illinois cities, however, is neither a new practice nor an invalid one. The Illinois Supreme Court stated as early as 1954 that population classifications distinguishing Chicago from the rest of the State are presumed valid and will be voided only when clearly arbitrary. (*Du Bois v. Gibbons* (1954), 2 Ill. 2d 392, 118 N.E.2d 295.) Classifying Chicago differently from other cities is not, in itself, sufficient to render the classification a special law. (*Alexander v. City of Chicago* (1958), 14 Ill. 2d 261, 266, 151 N.E.2d 319, 322.) Any such classification must be reasonable and based upon rational differences of condition among the classified municipalities. (*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 379-80, 489 N.E.2d 1385, 1388.) Further, the supreme court has stated that "[t]he burden of demonstrating the unreasonableness or arbitrariness of a classification lies with the person attacking its validity. [Citation.] Reasonable doubts must be resolved in favor of upholding the validity of legislation establishing a classification." *In re Belmont Fire Protection District*, 111 Ill. 2d at 380, 489 N.E.2d at 1388.

Consequently, Des Plaines and the intervenors bear the burden of proving that Public Act 86—935 unreasonably and arbitrarily classified the City of Chicago differently from the rest of the State's cities; they also must prove there is no fair reason for not applying the amendment to the City of Chicago. They have not met, and have not even attempted to meet, either burden. Instead, they cite a long string of cases holding that population classifications cannot be arbitrary, followed by the assertion that the classification in Public Act 86—935 is arbitrary. Since classifications such as this one are entitled to the presumption of validity, and since Des Plaines and the intervenors have failed to overcome that presumption, their argument that Public Act 86—935 is unconstitutional as a special or local law must be rejected.

## III

■ Des Plaines and the intervenors next assert that Public Act 86—935 is invalid as a violation of section 8(d) of article IV of the Illinois Constitution of 1970 as an improper amendment to several other statutes. They argue that the amendment is contrary to the provisions of section 10—2.1—4 of the Illinois Municipal Code (65 ILCS 5/10—2.1—4 (West 1992)) (the Board of Fire and Police Commissioners Act), which gives the Board of Fire and Police Commissioners the power to make rules for appointments and re-

newal, and contrary to other statutes related to the control of municipal finances. Further, they assert, it amends those sections without setting forth any of the sections amended or repealed, as required by the Illinois Constitution.

Plaintiffs respond that the amendment is not an invalid attempt to amend other statutes. They argue that the foreign fire insurance tax funds are not municipal finances but State funds derived from the imposition of a State tax levy. They further argue that the provisions of the Board of Fire and Police Commissioners Act and section 11—10—2 use the term "officers" in completely different ways and that there is no conflict between them.

The Illinois Constitution of 1970 contains the following language: "A bill expressly amending a law shall set forth completely the sections amended." (Ill. Const. 1970, art. IV, § 8(d).) A similar requirement also appeared in the Illinois Constitution of 1870, and our supreme court in construing that provision has repeatedly held that if a new act makes changes by adding new provisions or mingling the new with the old, then it is an amendment within the constitutional prohibition even though it professes to be an independent act. See, *e.g.*, *People ex rel. Gramlich v. City of Peoria* (1940), 374 Ill. 313, 317, 29 N.E.2d 539, 541; *Wagner v. Retirement Board of Policemen's Annuity & Benefit Fund* (1938), 370 Ill. 73, 81-82, 17 N.E.2d 972, 976; *People ex rel. Clarke v. Jarecki* (1936), 363 Ill. 180, 186, 1 N.E.2d 855, 858.

By amending section 11—10—2 of the Illinois Municipal Code to increase the size of municipalities covered by the act, Public Act 86—935 gives to members of fire departments of municipalities under 250,000 in population the right to elect officers, including a treasurer, and to make all necessary rules with respect to the department and the management of money paid to the treasurer. However, the Board of Fire and Police Commissioners Act, establishing a Board of Fire and Police Commissioners for each city of greater than 5,000 and less than 250,000 population, grants to the local board the power to appoint officers. Further, section 10—2.1—5 of the Board of Fire and Police Commissioners Act (65 ILCS 5/10—2.1—5 (West 1992)) grants to the local board the power to promulgate rules. Although these sections appear to conflict with the power granted to members of the fire department under section 11—10—2, the provisions of the Board of Fire and Police Commissioners Act and section 11—10—2 refer to entirely different kinds of officers and rules.

The officers referred to in the Board of Fire and Police Commissioners Act include "the chief of the fire department." The implication is clear that the officers referred to are those in the formal chain of

command. This view is buttressed by the Board of Fire and Police Commissioners Act's granting such boards power to make rules relating to appointment and renewal and promotion. On the other hand, the officers referred to in section 11—10—2 "shall include a treasurer." Again, the implication is clear that these officers are those who are entrusted by fellow firefighters with internal management of fire department funds, perhaps including a president, vice-president, and secretary in addition to the statutorily mandated treasurer. Their power to make rules is limited to those regarding the fire department "and the management of the money to be paid to the treasurer." (65 ILCS 5/11—10—2 (West 1992).) There is thus no conflict between the powers granted by the Board of Fire and Police Commissioners Act and those granted by section 11—10—2.

Further, Public Act 86—935 does not amend sections 8—1—1 and 8—1—2 of the Illinois Municipal Code (the Finance Act) (65 ILCS 5/8—1—1, 8—1—2 (West 1992)), which provide that municipal authorities control the finances of the municipality and appropriate funds for payment of debts and expenses of the municipality. The funds at issue are not municipal funds, but as discussed above are funds derived from the imposition of a State tax levy. The municipalities merely collect the funds and, by operation of section 11—10—2, distribute them to the fire departments.

Public Act 86—935 is not unconstitutional on the ground that it violates section 8(d) of article IV of the Illinois Constitution. It is not an invalid attempt to amend other statutes, nor does it fail to set forth completely the sections amended.

## IV

■ Des Plaines and the intervenors next assert that Public Act 86—935 violates section 8(d) of article IV of the Illinois Constitution of 1970 in that it is not confined to one subject. The amendment covers a multiplicity of subjects, they argue, including the imposition on municipal authorities of an obligation to pass an ordinance providing for the election of officers of the fire department by its members, and the imposition of a duty on the municipal treasurer. Plaintiffs respond that all of the provisions of the amendment have a clear, rational relation to the amendment's objective of providing funds to fire departments to be spent for their benefit, and, they argue, that satisfies the constitutional requirement.

The Illinois Constitution of 1970 contains the following language: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." (Ill. Const. 1970, art. IV, § 8(d).) The Illinois Constitution of 1870

contained similar language. Illinois courts have, however, extended wide latitude to the General Assembly in their interpretation of the term "subject." In *People ex rel. Gutknecht v. City of Chicago* (1953), 414 Ill. 600, 111 N.E.2d 626, the Illinois Supreme Court stated:

> "The term 'subject' is comprehensive in its scope and may be as broad as the legislature chooses, so long as the matters included have a natural or logical connection. An act may include all matters germane to its general subject, including the means reasonably necessary or appropriate to the accomplishment of the legislative purpose." (*Gutknecht*, 414 Ill. at 607-08, 111 N.E.2d at 632.)

Interpreting the 1970 Constitution, the supreme court demonstrated a similar understanding in upholding the Transportation Bond Act against a challenge that it was not confined to one subject. *People ex rel. Ogilvie v. Lewis* (1971), 49 Ill. 2d 476, 487-88, 274 N.E.2d 87, 94.

The subject matter of the amendment to section 11—10—2 is the provision of foreign fire insurance funds to fire departments for their benefit. In order to achieve this end, there must be a mechanism for the transfer of funds to the fire departments. Directing foreign fire insurance companies to pay the tax or licensing fee to home rule units, the units of government most directly connected with the insured property, who in turn are directed to transfer the funds to their fire department treasurers, is a logical way to achieve the desired end. In order for the money so collected to be spent properly, there must be members of the fire department responsible for its use. Requiring home rule units to draft rules for the election of such members is also a logical course of action. Requiring the fire department treasurer to spend the money only on the order of the fire department, and only for the maintenance, use, and benefit of the fire department, is also logical.

Because the legislative scheme is a logically consistent way to achieve the goals of the Act, and all matters contained in it are germane to its general subject and reasonably appropriate to the accomplishment of the legislative purpose, under the supreme court's guidelines, section 11—10—2, as amended, is confined to one subject. It is therefore constitutional under section 8(d) of article IV of the Illinois Constitution of 1970.

## V

■ Des Plaines and the intervenors finally assert that section 11—10—2, as amended, is unconstitutionally vague. They argue that any person reading the statute would not have any notion as to where the appointment power of fire department officers lies or which body

controls municipal funds derived from the tax levy. Further, they argue, the language contained in the statute that the fire departments are to spend the funds received only for "the maintenance, use, and benefit of the fire department" (65 ILCS 5/11—10—2 (West 1992)) is so vague as to render the statute unconstitutional. According to Des Plaines and the intervenors, that language could include the furnishing of fire equipment, paid holidays for firefighters, annual banquets, or barbecues on the Fourth of July.

Plaintiffs respond that the language of section 11—10—2 is perfectly clear. They further argue that the form of the Act prior to its amendment had been in effect since 1895 and had previously withstood a constitutional challenge.

The Illinois Supreme Court has established guidelines for declaring statutes void for vagueness. For example, in *People ex rel. Duffy v. Hurley* (1949), 402 Ill. 562, 85 N.E.2d 26, the court stated:

> "Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, have uniformly been declared unconstitutional as denying due process." *Duffy*, 402 Ill. at 567, 85 N.E.2d at 28.

In this case, however, as discussed above, the statute at issue is not incomplete, vague, indefinite, nor uncertain. It is not necessary to guess at its meaning—its meaning has been clear to those to whom it has applied for almost 100 years. It is only now that it applies to a new class of larger municipalities because of Public Act 86—935 that Des Plaines and the intervenors purport to find it unclear because they do not wish to abide by its requirements.

Further, the Illinois Supreme Court has already considered the constitutionality of section 11—10—2 in *People ex rel. Daesch v. Mayor of Belleville* (1961), 22 Ill. 2d 226, 174 N.E.2d 678. Although *Daesch* was a *mandamus* action, the supreme court conducted a thorough analysis of section 11—10—2 and "conclude[d] that [it] is constitutional." (*Daesch*, 22 Ill. 2d at 231, 174 N.E.2d at 681-82.) The argument of Des Plaines and the intervenors that this declaration is merely *dicta* is unpersuasive. A necessary predicate for the consideration of whether to issue a writ of *mandamus* is a finding that the statute sought to be enforced is constitutional, and the Illinois Supreme Court found section 11—10—2 to be constitutional in 1961.

For the reasons given above, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.