HOFFMAN ESTATES PROFESSIONAL FIREFIGHTERS ASSOCIATION *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF HOFFMAN ESTATES *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—98—0489

Opinion filed March 31, 1999.—Rehearing denied June 18, 1999.—Modified opinion filed June 23, 1999, *nunc pro tunc* March 31, 1999.

Richard N. Williams, Corporation Counsel, of Village of Hoffman Estates, of Hoffman Estates, for appellants.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Brian A. Schroeder, of counsel), for appellees.

JUSTICE BURKE delivered the opinion of the court:

Defendants, the Village of Hoffman Estates, a municipal corporation, and the Village's mayor, trustees, manager, finance director, and clerk/treasurer (the Village) appeal from an order of the circuit court granting plaintiff Hoffman Estates Professional Firefighters Association (the Association) and its president Charles O'Connor's motion for summary judgment and denying the Village's motion for summary judgment. The court's order required the Village to comply with section 11—10—2 of the Illinois Municipal Code (Code) (65 ILCS 5/11—10—2 (West 1996)) by creating a foreign fire insurance board[1] (Board), and upon doing so, to turn over to the Board all foreign fire insurance tax proceeds authorized and collected by the Village pursuant to section 11—10—1 of the Code (65 ILCS 5/11—10—1 (West 1996)) "from January 1, 1985, to the present."

On appeal, the Village argues that it was not subject to the requirements of section 11—10—2 to create the Board and fund it with the proceeds of the foreign fire insurance tax "from January 1, 1985 to the present" because the Village: (1) was not required by statute "to create and fund the Board prior to 1990"; (2) the State Mandates Act (30 ILCS 805/1 et seq. (West 1996)) relieved the Village from compli-

---

[1]Prior to June 30, 1995, section 11—10—2 of the Code had provided that a municipality "shall pass an ordinance providing for the election of officers of that department." Pursuant to Public Act 89—63, section 11—10—2 was amended and currently designates the elected officers as the "foreign fire insurance board." Pub. Act 89—63, § 5, eff. June 30, 1995.

ance with the statutory requirement to create and fund the Board with foreign fire insurance tax proceeds after the 1990 amendment; and (3) the collective bargaining agreement between the Village and the Association barred the Association from bringing a cause of action against the Village to make it pay the tax proceeds to the Association from 1990 to 1995. For the reasons set forth below, we reverse and remand.

The Association is a labor association affiliated with the International Association of Firefighters, AFL-CIO, CLC. The Association was organized to provide for the "general welfare" of the Hoffman Estates firefighters and the Hoffman Estates fire department. The Village is an Illinois municipality which has an organized fire department. The Village's population is less than 50,000.

Section 11—10—1 of the Code, prior to and since 1990, is entitled, "Foreign Fire Insurance Company Fees," and provides for the Village's collection of a tax, not to exceed 2% of the gross receipts from fire insurance, upon property situated within the Village where fire insurance is provided by an insurance company not incorporated under the laws of Illinois. 65 ILCS 5/11—10—1 (West 1996). The Village levied the tax from 1985 until 1997, collected the proceeds, and placed them in the firefighters' pension fund. According to the Village, the amount of taxes collected by it from 1985 through 1996, and the 1997 estimated amount, was $283,483.

The parties' dispute arose in 1996 when the Association requested that the Village transfer the foreign fire insurance tax proceeds to the Hoffman Estates' fire department pursuant to section 11—10—2 of the Code. The Village refused to transfer the funds to the fire department and continued to collect the tax. As a result, the Association filed a complaint for a writ of *mandamus* and declaratory judgment on February 18, 1997, to require the Village to create the Board and turn over to the Board all foreign fire insurance tax proceeds the Village collected pursuant to section 11—10—1 "from January 1, 1985, to the present." The Association alleged in its complaint that the Village did not transfer the collected tax proceeds to the firefighters' pension fund or to the fire department, but instead transferred the tax proceeds into the Village's "General Fund."

The Village filed a motion for summary judgment, arguing that prior to the 1990 amendment of section 11—10—2 it had the option of paying the fire insurance tax proceeds to the fire department treasurer or to the firefighters' pension fund, and it opted to pay into the pension fund. The Village further argued that upon amendment of the statute and the elimination of the option to pay the tax proceeds to the firefighters' pension fund, it did not comply with section 11—

10—2 because the statute "is a violation of" the State Mandates Act (30 ILCS 805/1 *et seq.* (West 1996)). More specifically, the Village maintained that the creation of the Board, under the amended statute, created a personnel mandate within the meaning of the State Mandates Act because the Village would have to pay overtime wages to firefighter members elected to the Board for their service on the Board pursuant to the Fair Labor Standards Act (FLSA). 29 U.S.C. § 203(e)(4)(a) (1994). The Village therefore argued that since section 11—10—2 is a personnel mandate that is not exempted from reimbursement by the state to local governments under the State Mandates Act, the Village was not required to comply with the statute because no appropriation for reimbursement had been made by the General Assembly for additional costs that the Village alleged it would incur.

In response, the Association contended that section 11—10—2 prior to 1981, the effective date of the State Mandates Act, was not subject to the State Mandates Act because the Act only applies to legislation enacted after its effective date. The Association also argued that to the extent any amendments to section 11—10—2 after 1981 "violate" the State Mandates Act, only the amendment is invalid and the statute would be left in force as it was prior to the amendment. Therefore, the Association maintained that the Village was required to "enact an ordinance providing for the election of foreign fire insurance tax board officers" and "turn over to the [Association] *** all foreign fire insurance tax proceeds *** collected by [the Village] *** from January 1, 1985 until the present." The Association also claimed that the Village's position, that it was not until the 1990 amendment that its home rule unit authority was preempted, was "based upon a fundamental misapprehension of the nature of home rule unit authority." The Association maintained that "home rule units must obey all laws which do not contain an express home rule preemption unless and until a conflicting ordinance is enacted" and, since the Village never enacted an ordinance that in any way conflicted with the terms of section 11—10—2, the Village was at all times bound to obey the statute. The Association further argued that the FLSA was irrelevant to a violation of the State Mandates Act because the FLSA "excludes the [Board] officers from the definition of employees" since the officers' services on the Board would not be the same services for which they are employed by the Village as firefighters. The Association also argued the FLSA was irrelevant to a "violation" of the State Mandates Act because an employment relationship would not exist between the Village and the Board due to the fact that the Village would not have control of hiring and firing the members elected to the Board, control

over the manner in which work is performed, fixing of wages, and maintaining of employment records.

The Association also filed a motion for summary judgment, arguing that the Village did not have a right to refuse to comply with section 11—10—2 to create the Board and pay to the Board the foreign fire tax proceeds collected by the Village since 1985. The Association also argued that section 11—10—2 did not violate the State Mandates Act. The Association further argued, as it had in its response to the Village's motion for summary judgment, that to the extent any post-1981 amendment to section 11—10—2 violated the State Mandates Act, the amendment is void, but the statute is still valid as it existed prior to any amendment. The Association also argued that the amendments to section 11—10—2 since 1981 constituted local government organization and structure mandates under section 3(c) of the State Mandates Act and, therefore, the state was not required to reimburse the Village at all for its implementation.

In response, the Village contended that "[a]fter the approval of the Illinois Constitution of 1970, the provisions of the foreign fire insurance legislation were optional with home rule municipalities such as Hoffman Estates." Therefore, the Village argued that "municipalities were no longer subject to legislative provisions without an express exclusivity statement from the General Assembly." The Village maintained that the first time section 11—10—2 applied to it was when the express language of home rule preemption was included in the 1990 amendment. The Village further argued that, after this amendment, the State Mandates Act clearly applied and that the "command" of section 11—10—2 was a personnel mandate and it was relieved from complying with the statute because, pursuant to the FLSA, it would incur overtime costs that were not funded by the General Assembly, but passed on to the municipalities in violation of the State Mandates Act. The Village also argued that the Association's April 17, 1990, collective bargaining agreement "side letter," which permitted the Village to retain the foreign fire insurance tax proceeds and place them in the firefighters' pension fund, barred the Association from receiving the fire insurance tax proceeds from April 17, 1990, to April 30, 1993. The Village further argued that the contract remained in effect until August 14, 1995, when a new contract was executed by the Association. Attached to the Village's response was a sworn affidavit from the Village's finance director stating the tax amounts collected from 1985 through 1989 and the amounts placed into the pension fund for the same years. The Village claimed that it collected the tax in the amount of: $7,965 in 1985 and paid $500,000 into the firefighters' pension fund; $8,037 in 1986 and paid $500,000

into the pension fund; $12,230 in 1987 and paid $500,000 into the pension fund; $10,562 in 1988 and paid $95,025 into the pension fund; $12,333 in 1989 and paid $240,545 into the pension fund.

After hearing arguments on the parties' motions, the trial court granted the Association's motion for summary judgment and denied the Village's. The court further ordered that the Village comply with section 11—10—2 and create the Board and, thereafter, turn over the foreign fire insurance tax proceeds "from January 1, 1985, to the present" to the Board. This appeal followed.

■ A motion for summary judgment should be granted when the pleadings, depositions, admissions, and affidavits before the court establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996); *Brown v. Murphy*, 278 Ill. App. 3d 981, 989, 644 N.E.2d 186 (1996). The review of a grant of summary judgment is *de novo* (*Greenberg v. Orthosport, Inc.*, 282 Ill. App. 3d 830, 832, 668 N.E.2d 1012 (1996)), as is the construction of a statute, which is an issue of law (*Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61 (1996)).

PRE-1990 AMENDMENT

In the present case, the Village first argues it was in compliance with the pre-1990 section 11—10—2 (Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2) because before the 1990 amendment, it had the option of paying the foreign fire insurance tax proceeds into the firefighters' pension fund instead of turning the proceeds over to the treasurer of the fire department.

The Association argues that because the pre-1990 section 11—10—2 had stated that municipalities "shall" enact an ordinance providing for the election of officers, and the tax proceeds "shall" be paid over by the municipality to the fire department (Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2), the "[u]se of the word 'shall' means a mandatory obligation to perform the acts enumerated." Accordingly, the Association contends that the Village was required to comply with the statute at that time to enact an ordinance for the election of officers and to pay the foreign fire insurance tax proceeds to the fire department. Contrary to its argument, however, the Association also stated during oral argument before this court that, while the Village was required to enact an ordinance to elect officers, after doing so, the Village *could* exercise the pre-1990 option to pay the tax proceeds into the pension fund. The Association further argues that during 1985 to 1989, section 4—118 of the Illinois Pension Code "mandated that *** [the Village] 'annually levy a tax' in an amount that when combined

with firefighter contributions 'will equal a sum sufficient to meet the annual actuarial requirements of the pension fund" (40 ILCS 5/4—118 (West 1996)) and, "because [the Village] made no express, specific appropriation of the foreign fire insurance tax proceeds to the Firefighters' Pension Fund[,] they failed to obey the terms of 65 ILCS 11—10—2." The Association alternatively contends that, while it does not dispute that the Village appropriated more money to the firefighters' pension fund than it collected in foreign fire insurance tax proceeds during 1985 to 1989, "the Record in this cause is insufficient to support [the Village's] assertion the foreign fire insurance tax proceeds were 'poured over' into the Firefighters Pension Fund, for the Record does not indicate what amounts were required to be appropriated thereto for the years 1985-1989 by virtue of 40 ILCS 5/4—118," and "[r]emand to the Circuit Court for consideration of this issue would be the proper course of action." The Association further maintains that the statute "was intended to be a means for municipalities, if they chose, to *supplement* the funding for their firefighters' pension funds. The statute was not intended to be used as a means for municipalities to *decrease* the amount of their contributions by the amount of the collected tax proceeds." (Emphasis added.) According to the Association, "[t]he 1990 amendment to the statute which removed the option to pay the tax proceeds to firefighters' pension funds supports this conclusion."

Section 11—10—2, enacted on July 1, 1961, governed how the funds received by the Village from the foreign fire insurance tax were to be used. In 1985, section 11—10—2 provided:

"The corporate authorities of any municipality containing less than 50,000 inhabitants which has an organized fire department *shall* pass an ordinance providing for the election of officers of that department, by the members of the department. These officers shall include a treasurer, and they shall make all needful rules and regulations with respect to the department and the management of the money to be paid to the treasurer. *In all such municipalities the municipal treasurer shall pay the sums received from the insurance companies specified in Section 11—10—1 to the treasurer of the fire department of the municipality in which it is collected.* \*\*\* The treasurer of the fire department *shall* pay out the money upon the order of the fire department for the maintenance, use, and benefit of the department.

*However, in any municipality where a firemen's pension fund is or may be established under this Code* or other laws of this state, *all of the money paid to the municipal treasurer as provided in Section 11—10—1 may be set apart and appropriated by the municipality to the fund for the pensioning of disabled and superannuated*

*members of the fire department, and of the surviving spouses and orphans of deceased members of the fire department."* (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2.

■ It is well settled that the rules of statutory construction require a court to determine and follow the intent of the legislature using the language of the statute as the most reliable indicator of the legislature's intent. *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 424, 688 N.E.2d 364 (1997). Whether a statutory provision is mandatory or merely directory depends upon the intent of its drafters. *People v. Reed*, 177 Ill. 2d 389, 393, 696 N.E.2d 584 (1997).

■ The language of section 11—10—2, as it existed before the 1990 amendment and in effect while the Village was collecting the foreign fire insurance tax from 1985 until the 1990 amendment, stated that "all of the money paid to the municipal treasurer as provided in Section 11—10—1 *may* be set apart and appropriated by the municipality" for payment to an established pension fund. (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2. The legislative use of the word "may" is generally regarded as indicating a permissive reading. *Reed*, 177 Ill. 2d at 393. In the present case, because the pre-1990 statute provided that a municipality *may* pay the foreign fire insurance tax proceeds into an established pension fund, we find that the Village clearly had the option of placing the tax proceeds into the firefighters' pension fund. *Des Plaines Firemen's Ass'n v. City of Des Plaines*, 267 Ill. App. 3d 920, 926-27, 642 N.E.2d 732 (1994) ("Prior to the passage of the [1990] amendment, home rule units were allowed to levy the tax, and they had two options regarding the disposition of the funds received: they could be given to the treasurer of the fire department, or they could be used by the municipality for contributions to the firefighters' pension fund").

Notwithstanding our holding, we find that a material question of fact existed as to the exact amount of the collected tax proceeds that were paid by the Village into the pension fund, as argued by the Association. The Village in its brief stated that it made the appropriation from the "General Fund, the same General Fund to which the 'fungible' foreign fire insurance tax proceeds were deposited." However, the record is silent as to what the Village's annual actuarial requirements were from 1985 to 1989 pursuant to section 4—118 of the Illinois Pension Code. 40 ILCS 5/4—118 (West 1996). Section 4—118 provides:

"(a) The city council or the board of trustees of the municipality shall annually levy a tax upon all the taxable property of the municipality at the rate on the dollar which will produce an amount which, when added to the deductions from the salaries or wages of

firefighters *and revenues available from other sources*, will equal *a sum sufficient to meet the annual actuarial requirements of the pension fund.*" (Emphasis added.) 40 ILCS 5/4—118(a) (West 1996). The record in the present case only states the total amount paid by the Village into the pension fund for the years 1985 to 1989, without a breakdown of what portion of the total amount paid represented the tax proceeds. Therefore, a material question of fact existed as to whether the amounts paid by the Village into the pension fund prior to 1990 included the actual amounts of the tax proceeds collected. Accordingly, we hold that the trial court erred in granting summary judgment in favor of the Association.

We briefly note that pre-1990 section 11—10—2 contained no language which prohibited the Village from using the tax proceeds to decrease its annual actuarial contribution to the pension fund. Nor does the Association cite to any authority regarding its argument that the 1990 amendment's elimination of a municipality's option to pay the tax proceeds into the pension fund supports the conclusion that the tax proceeds were not intended to be used by the Village to decrease the amount of its contribution to the pension fund. Further, upon researching this issue, we found no legislative history regarding section 11—10—2 available because transcripts of the legislature's debates only became available in 1971 and the statute was enacted in 1961. On the other hand, while the legislative debates concerning the 1990 amended section 11—10—2 discussed the pre-1990 section, the opinions recorded in those debates regarding the intended use of the foreign fire insurance tax proceeds prior to 1990 appear to be in contradiction of the pre-1990 statutory language and, therefore, unhelpful. For example, a proponent of the 1990 amendment stated: "Today as the law stands, these monies [foreign fire insurance tax proceeds] are used for pension funds and the monies go into the general fund. \*\*\* The *original intent* of this Bill when originally enacted 25 years ago, was to *have these funds go into new fire equipment* \*\*\*. \*\*\* The only question is, that these funds that were *originally intended to be used for new fire fighting equipment*, are not going for that. *What they're going for, are pension funds* and there's a separate code that takes care of that." (Emphasis added.) 86th Ill. Gen. Assem., House of Representatives, Transcription Debate, at 24-25, 28. Clearly the statement that the original intent for the use of the tax proceeds was, apparently solely, to purchase new fire equipment conflicts with the express pre-1990 statutory language giving municipalities the option to pay the tax proceeds into an established pension fund. Therefore, we find this interpretation of the pre-1990 intended use of the tax proceeds flawed and, consequently, the Association's argument here,

that the 1990 amendment's elimination of the option supports a conclusion that the tax proceeds were not intended to decrease the Village's pension obligation, unpersuasive. On the other hand, section 11—10—2, by using the word "may," clearly gave the Village the option to pay the tax proceeds into the firefighters' pension fund. Also, because the statute gave the Village this option, the fact that the Village did not elect a group of officers, presumably to be the repository for the tax proceeds, is not relevant since the election of officers was not necessary in light of the Village's exercise of the option to pay the tax proceeds into the pension fund, as discussed more fully below.

1990 AMENDMENT

The Village next contends that section 8 of the State Mandates Act relieved it from complying with the 1990 amendment to section 11—10—2, requiring it to create and fund the Board, because section 11—10—2 was a personnel mandate. 30 ILCS 805/8 (West 1996). The Village argues that under amended section 11—10—2 it will incur additional costs in paying wages in the form of overtime to elected firefighters to the Board pursuant to the FLSA. The Village maintains that these additional costs fall under section 6(d) of the State Mandates Act and require reimbursement by the State for which no appropriation has been made by the Illinois General Assembly. 30 ILCS 805/6(d) (West 1996).

The Association argues that even if section 11—10—2 is an unfunded mandate, the alleged mandate is irrelevant because under the pre-1990 section 11—10—2 the Village was "always" required to elect officers and, therefore, since this requirement existed prior to the effective date of the State Mandates Act, the State Mandates Act is not applicable. The Association also argues that to the extent any amendment to section 11—10—2 is a state mandate, the mandate "imposes additional duties of a nature which can be carried out by existing staff and procedures at no appreciable net cost increase" and, therefore, it is not a reimbursable mandate under section 8(a)(2) of the State Mandates Act. 30 ILCS 805/8(a)(2) (West 1996). Alternatively, the Association argues that section 11—10—2 is a local government organization and structure mandate under section 3(c) of the State Mandates Act and that the mandate is exempt from reimbursement by the state under section 6(a) of the State Mandates Act. 30 ILCS 805/ 3(c), 6(a) (West 1996).

■ In 1990, section 11—10—2 was amended, and it currently provides:

"The corporate authorities of any municipality containing less than 250,000 inhabitants which has an organized fire department

*shall pass an ordinance providing for the election of officers of the department foreign fire insurance board* by the members of the department. \*\*\* These officers shall include a treasurer, and they shall make all needful rules and regulations with respect to the department foreign fire insurance board and the management of the money to be appropriated to the board. \*\*\* *All of the money paid to the municipal treasurer as provided in Section 11—10—1 shall be set apart and shall be appropriated annually by the corporate authorities to the department foreign fire insurance board.* \*\*\* The treasurer of the department foreign fire insurance board shall receive the appropriated money and shall pay out the money upon the order of the department foreign fire insurance board for the maintenance, use, and benefit of the department." (Emphasis added.) 65 ILCS 5/11—10—2 (West 1996).

In determining the intent of the legislature in enacting a statute, we look to the nature of the auxiliary verb it used. Legislative use of the word "shall" is generally considered to express a mandatory reading. *Reed,* 177 Ill. 2d at 393. The 1990 amendment to section 11—10—2 provided that "[t]he corporate authorities of any municipality \*\*\* which has an organized fire department *shall* pass an ordinance providing for the election of officers of the department *foreign fire insurance board* by the members of the department." (Emphasis added.) 65 ILCS 5/11—10—2 (West 1996). The amendment further changed section 11—10—2 by adding that "[a]ll of the money paid to the municipal treasurer as provided in Section 11—10—1 *shall* be set apart and *shall* be appropriated annually by the corporate authorities *to the department foreign fire insurance board*" (65 ILCS 5/11—10—2 (West 1996)), and deleting the paragraph that had been in effect since the statute was enacted, and which we have determined above gave the Village the option to pay the fire insurance tax proceeds into the firefighters' pension fund. We therefore conclude that the language of amended section 11—10—2, requiring municipalities to pass an ordinance to elect a Board and to pay to the Board the tax proceeds collected by them pursuant to section 11—10—1, is mandatory.

We next consider the Village's argument that the State Mandates Act relieved it from complying with amended section 11—10—2 to create a Board and to pay the tax proceeds to the Board. The Association argues that the State Mandates Act is inapplicable because the requirements of 11—10—2, which was enacted in 1961, predated the State Mandates Act, which became effective on January 1, 1981.

■ ■ The purpose of the State Mandates Act is "to enunciate policies, criteria and procedures to govern *any future* State-initiated specification of local government services, standards and employment

conditions that has *the effect of necessitating increased local government expenditures.*" (Emphasis added.) 30 ILCS 805/2(2) (West 1996). A "State mandate," as defined in the State Mandates Act, is "any State-initiated statutory or executive action that requires a local government to establish, expand or modify its activities in such a way as to *necessitate additional expenditures from local revenues.*" (Emphasis added.) 30 ILCS 805/3(b) (West 1996). A "[l]ocal government organization and structure mandate" is "a State mandate concerning such matters as (1) the form of local government and the adoption and revision of statutes on the organization of local government; *** and (5) the prescription of administrative practices and procedures for local governing bodies." 30 ILCS 805/3(c) (West 1996). A "[p]ersonnel mandate" is "a State mandate concerning or affecting local government (1) salaries and wages; *** and (4) fringe benefits including insurance, health, medical care, *retirement* and other benefits." (Emphasis added.) 30 ILCS 805/3(h)(1), (h)(4) (West 1996). When a municipality's costs are increased by a mandate for which no funds have been appropriated, the municipality is relieved of the obligation to implement the mandate. 30 ILCS 805/8(a) (West 1996); *Orr v. Edgar*, 283 Ill. App. 3d 1088, 1099, 670 N.E.2d 1243 (1996). A mandate is excluded from reimbursement when it "imposes additional duties of a nature which can be carried out by existing staff and procedures at no appreciable net cost increase." 30 ILCS 805/8(a)(2) (West 1996).

■ We interpret the pre-1990 section 11—10—2 as consisting of two separate provisions, complete within themselves, one mandatory and the other permissive. The section first mandatorily provided that a municipality "*shall* pass an ordinance providing for the election of officers" and the "municipal treasurer *shall* pay the sums received from the insurance companies specified in Section 11—10—1 to the *treasurer of the fire department.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2. The section then provided for a permissive alternative to the preceding mandatory provision, *i.e.*, "*However*, in any municipality where a firemen's pension fund is or may be established ***, all of the money paid to the municipal treasurer *** *may* be set apart *and appropriated by the municipality to the fund for the pensioning of *** members of the fire department.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 24, par. 11—10—2. We conclude that because of the existence of the opposite mandatory and permissive language within the same section, the provisions can be properly interpreted as alternatives sufficient within themselves, *i.e.*, if a municipality enacted an ordinance to elect officers, it was required to pay the tax proceeds to the fire department, but if a municipality

exercised the option of paying the tax proceeds into a pension fund, the requirement of the first alternative, to elect officers, was not required as a result of the municipality's exercise of the second alternative option because electing the officers would have no operative effect on the municipality's exercise of the pension fund option, and, therefore, the election-of-officers provision pertained solely to the first alternative. To hold otherwise would result in an absurdity, *i.e.*, requiring a municipality to elect officers with no function, since that function was being exercised by the municipality under the statutory option to pay the foreign fire insurance tax proceeds into an established pension fund. Accordingly, the Association's argument here, that the State Mandates Act is inapplicable because section 11—10—2 predates the Act and the Village was always required to comply with the pre-1990 section 11—10—2 by enacting an ordinance to elect officers, fails.

With respect to the 1990 amended section 11—10—2, we conclude that since the amendment occurred after the enactment of the State Mandates Act, the Act would be applicable if section 11—10—2 is determined to be a personnel mandate.

■ We next observe that the practical effect of the 1990 amendment to section 11—10—2 is the elimination of the foreign fire insurance tax as a source of revenue to the Village to pay its mandatory contribution to the firefighters' pension fund. However, the requirement that the Village make the mandatory contribution of "a sum sufficient to meet the annual actuarial requirements of the pension fund" remains in place. 40 ILCS 5/4—118(a) (West 1996). Because the 1990 amended section 11—10—2 mandatorily required the Village to turn the foreign fire insurance tax proceeds over to the Board, revenue previously paid into the firefighters' pension fund by the Village, material questions of fact existed as to the impact on the Village's mandatory contribution to the pension fund, which directly affects the fringe benefits, insurance and retirement benefits of the firefighter members, and whether amended section 11—10—2 constitutes a personnel mandate, necessitating additional local government expenditures for overtime wages to Board members pursuant to the FLSA, for which no appropriation has been made by the General Assembly, or some other nonreimbursable mandate. The record before us lacks the necessary Village budget information to find, as a matter of law, that earmarking the foreign fire insurance tax proceeds will not have the effect of necessitating increased local government expenditures. The amount of foreign fire insurance tax proceeds may not exceed the dollar amounts subject to the exclusion clause of section 8(a) of the State Mandates Act. 30 ILCS 805/8(a) (West 1996). On the other hand, the

Village may be able to establish at trial that they do. Accordingly, because material questions of fact existed, we hold that the trial court erred in granting summary judgment to the Association, and we remand this cause for further proceedings.

In light of our remandment of this cause, we need not address the Village's remaining argument that the Association collectively bargained away its right to the tax proceeds pursuant to a "Side Letter" for the years 1990 through 1995.

For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

CAHILL, P.J., and McBRIDE,[2] J., concur.

---

[2]Justice McBride replaced Justice Leavitt as a panel member in this appeal, and she has reviewed the record and briefs and listened to the oral argument tape.